**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Jerry Ngome Komando

              v.                                    Civil No. 22-cv-425-SE

FCI Berlin Warden Richard A. Luna

**REPORT AND RECOMMENDATION**

     Jerry Ngome Komando, a federal prisoner who is incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), has filed a petition for a writ of habeas corpus (Doc. No. 1) under 28 U.S.C. § 2241, challenging the Federal Bureau of Prisons ("BOP") determination that he is ineligible to have his First Step Act ("FSA") time credits applied to his sentence, due to an immigration detainer for him lodged by U.S. Immigration and Customs Enforcement ("ICE").  The respondent, the FCI Berlin Warden, has moved for summary judgment (Doc. No. 6).  Mr. Komando objects and also moves for summary judgment (Doc. Nos. 2, 8).  The parties' cross-motions for summary judgment are before this court for consideration and a recommendation as to disposition.

**Background**[1]

     On June 9, 2021, the U.S. District Court for the Northern

_____

[1] The background facts are undisputed except as indicated.

District of Texas sentenced Mr. Komando on money laundering offenses, to a 5-year and 28-day term of imprisonment followed by two years of supervised release.  Mr. Komando began serving his sentence at a BOP contract facility in 2021 before he was transferred to FCI Berlin in April 2022.

In April 2022, after Mr. Komando's transfer to FCI Berlin, ICE lodged an immigration detainer with that facility.  See Doc. No. 8, at 9.  An immigration detainer "is a request from ICE to another law enforcement agency to detain a non-citizen up to 48 hours so that ICE may investigate whether the non-citizen is subject to deportation." Morales v. Chadbourne, 793 F.3d 208, 212 (1st Cir. 2015) (citing 8 C.F.R. § 287.7(a), (d)).  Mr. Komando's FCI Berlin detainer states: "This detainer arises from [Department of Homeland Security] authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters."  Doc. No. 8, at 9.

Mr. Komando's immigration proceedings remain pending.  He is not the subject of any final order of removal at this time.

On December 21, 2018, Congress enacted the FSA,[2] "with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to

---

[2] See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (enacted Dec. 21, 2018).

reduce recidivism." United States v. Venable, 943 F.3d 187, 188 (4th Cir. 2019).  The FSA requires the BOP to implement a risk and needs assessment system to track each prisoner's risk of recidivism and to expand access to "productive activities" and other programs to reduce the risk of recidivism. 18 U.S.C. § 3621(h).  The FSA also establishes incentives for successful participation in such programs and activities, including institutional incentives, such as expanded phone and visitation privileges, and, at issue here, a new type of sentencing time credit to be applied towards the date of a prisoner's access to prerelease custody or a term of supervised release.[3]  See, e.g., id. § 3632(d)(1)-(4) (incentives).

In January 2022, the BOP promulgated its final rule implementing the FSA's earned time credit provisions.  The regulation pertinent to the claims in this case states that the BOP may not apply the FSA earned time credits of prisoners who are subject to "final orders of removal." 28 C.F.R. § 523.44(a)(2); see also 18 U.S.C. § 3632(d)(4)(E)(i) (prisoner who "is the subject

---

[3] A transfer to "prerelease custody" involves the BOP's placement of a prisoner in a less restrictive custodial setting, for the purpose of affording the prisoner "a reasonable opportunity to adjust to and prepare for the reentry" into the community. 18 U.S.C. § 3624(c)(1); see also id. § 3624(g)(2).  A term of "supervised release" begins after the prisoner's term of BOP custody ends.  "A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court." 18 U.S.C. § 3624(e).

of a final order of removal" cannot apply any FSA time credits toward prerelease custody or early transfer to supervised release).

On November 18, 2022, the BOP issued Program Statement 5410.01,[4] concerning the FSA's earned time credits. That Program Statement provides that "inmates with unresolved pending charges and/or detainers" are not eligible to have their earned time credits applied to prerelease custody or supervised release "unless the charges and/or detainers are resolved." Id. And "[a]n inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of [earned time credits]." Id.

Mr. Komando has asserted that he has completed courses or programs while incarcerated which qualify for up to nine months of FSA time credits, that he has never refused to participate in any program or FSA survey, and that he has maintained a low or minimum risk rating throughout his incarceration. The Warden has offered no evidence or argument to dispute those assertions. Without applying any of his FSA time credits, the BOP has projected Mr. Komando's release date to be a date in August 2023.

In his § 2241 petition, Mr. Komando has claimed that the BOP's failure to accelerate his term of supervised release based on his

---

[4] BOP Program Statement 5410.01 is available at https://www.bop.gov/policy/progstat/5410_01.pdf § 10(b), at 13 (concerning 28 C.F.R. § 523.44(a)(2)).

earned time credits violates the FSA.  The Warden, invoking the
BOP's policy regarding prisoners with ICE detainers, has moved for
summary judgment on the merits of that statutory claim.[5]  Mr.
Komando has objected to the Warden's motion and has filed cross-
motions for summary judgment.

## Standard

### I.  Habeas Relief

A federal prisoner claiming he is "in custody in violation of
the Constitution or laws or treaties of the United States" may
petition for habeas relief.  28 U.S.C. § 2241(c)(3).  That
provision allows a federal inmate "to challenge the execution of
(rather than the imposition of) his or her sentence." Francis v.
Maloney, 798 F.3d 33, 36 (1st Cir. 2015).  The remedy under § 2241
has been traditionally available to prisoners challenging the
computation of their sentences by the BOP.  See Thornton v. Sabol,
620 F. Supp. 2d 203, 206 (D. Mass. 2009).  The petitioner bears the
burden of proving that his continuing detention violates his
federal rights.  See Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir.
2009).

---

[5] The Warden represented to the court during the January 12,
2023 oral argument in this matter that it has waived an exhaustion
defense in Mr. Komando's case.

## II.   Summary Judgment

Summary judgment is appropriate in habeas proceedings when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Bader v. Warden, No. 02-cv-508-JD, 2003 DNH 90, 2003 U.S. Dist. LEXIS 8955, at *8-9, 2003 WL 21228520, at *3 (D.N.H. May 28, 2003) (citations omitted), aff'd, 488 F.3d 483 (1st Cir. 2007).  The court construes Mr. Komando's pleadings liberally, because of his pro se status.  See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008).

## Discussion

## I.   Statutory Construction and Deference to Agency

When federal courts review an agency's construction of a statute that it administers, the agency's interpretation is reviewed "de novo," applying the "established principles of deference." Perez-Olivo v. Chavez, 394 F.3d 45, 48 (1st Cir. 2005).  The BOP administers the FSA's earned time credit provisions.  See, e.g., 18 U.S.C. §§ 3621(h), 3624(g), 3632(d)(4). Accordingly, this court construes the relevant statutory provisions in light of the BOP's role as the administering agency.

The first step in determining the level of deference (if any) that the court should accord to an agency's interpretation of a statute is an examination of the statute's terms.  See Perez-Olivo,

6

394 F.3d at 48.  If the statute's terms unambiguously provide an answer to the precise question before the court, then the court must give effect to that expression of legislative intent.  See id.

Courts defer to a federal agency's construction of a statute that it administers on the theory that a statute's silence or ambiguity on the precise question before the court "'constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps.'"  DeCambre v. Brookline Hous. Auth., 826 F.3d 1, 19 (1st Cir. 2016) (citation omitted).  If the agency promulgates a rule or regulation that addresses an issue as to which the statute is ambiguous or silent, the court applies the heightened standard of deference derived from Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984), which requires the court to accept the agency's interpretation if it is a reasonable policy choice that is neither arbitrary, nor capricious, nor manifestly contrary to the statute, regarding a matter that Congress has consigned to that agency's discretion.  See United States v. Mead Corp., 533 U.S. 218, 228-29 (2001) (citing Chevron, 467 U.S. at 843-44); see also River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 115 n.7 (1st Cir. 2009).  If the agency's interpretation has not undergone notice-and-comment rulemaking procedures, however, the court may take a less deferential approach in considering the factors bearing on the persuasiveness of the agency's interpretation, as outlined in Skidmore v. Swift & Co., 323 U.S. 134 (1944).  See River St.

7

Donuts, 558 F.3d at 115 n.7.

> "The weight [accorded to an administrative policy] . . .
> in a particular case will depend upon the thoroughness
> evident in its consideration, the validity of its
> reasoning, its consistency with earlier and later
> pronouncements, and all those factors which give it power
> to persuade, if lacking power to control."

Mead, 533 U.S. at 228 (quoting Skidmore, 323 U.S. at 140).

## II.  **Pertinent FSA Provisions**

### A.  **Overview**

The FSA establishes a new type of sentencing credit as an
incentive to encourage prisoners to participate in programs to
reduce the risk that they will recidivate, with one goal being the
cost savings associated with reduced recidivism and the transfer of
eligible prisoners from BOP facilities into prerelease custody or
supervised release.  See generally 18 U.S.C. § 3634(6)-(7)
(describing cost-savings purposes of FSA).  The FSA sentencing
credit operates separately from other pre-existing "credit"
systems, including the credits prisoners earn for good behavior
during incarceration.  See Brown v. Rieger, No. 2:22-cv-00259-JAW,
2022 U.S. Dist. LEXIS 209245, at *2 n.2, 2022 WL 17184294, at *1
n.2 (D. Me. Nov. 18, 2022), R&R approved, 2022 U.S. Dist. LEXIS
212189, 2022 WL 17184294 (D. Me. Nov. 23, 2022), appeal filed, No.
22-1945 (1st Cir. Dec. 9, 2022).  Not every inmate is eligible for
FSA earned time credits; the FSA contains "multiple eligibility
requirements, including an extensive list of convictions that

render a prisoner ineligible to earn time credits." Teed v. Warden, No. 1:22-CV-1568, 2022 U.S. Dist. LEXIS 213928, at *3, 2022 WL 17252584, at *1 (M.D. Pa. Nov. 28, 2022) (citing 18 U.S.C. § 3632(d)(4)(D) (listing more than sixty-eight disqualifying offenses)).

Under the FSA, eligible prisoners may earn 10 days of time credits, or in some cases, 15 days of credits (depending on their recidivism risk level), for every 30 days of qualified programs and activities they complete while serving the custodial component of their sentences. See id. § 3632(d)(4)(A), (B), (D). FSA time credits, when applied, advance the date when the prisoner will be placed in "prerelease custody" (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release. See Hedges v. U.S. Marshals Serv., No. 5:22-cv-294-DCR, 2022 U.S. Dist. LEXIS 212385, at *3, 2022 WL 17177630, at *3 (E.D. Ky. Nov. 23, 2022); see also 18 U.S.C. § 3624(g)(3) (BOP may apply up to twelve months of earned time credits to advance the date a prisoner begins to serve a term of supervised release).

## B.  Applicability of FSA Time Credits in General

Subparagraph (C) of § 3632(d)(4) governs how eligible prisoners' earned time credits will be applied in general:

> **(C) Application of time credits toward prerelease custody or supervised release.--** Time credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release.  The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C).  In general, the FSA directs that earned time credits "shall" be applied "toward time in prerelease custody or supervised release," and prescribes the outcome of that application, for eligible prisoners, as transfer into prerelease custody or supervised release.  Id.  This provision's use of the mandatory term, "shall," places a duty on the BOP to apply credits and to transfer eligible prisoners either to supervised release or to prerelease custody, with eligibility determined under 18 U.S.C. § 3624(g).[6]  See Stepp v. Thompson, No. 1:22-cv-964, 2022 U.S. Dist.

---

[6] The parts of 18 U.S.C. § 3624(g)(1) and (3), which set forth the eligibility criteria, are the following:

> **(1) Eligible prisoners.--** This subsection applies in the case of a prisoner . . . who—
>
> > **(A)** has earned time credits . . . equal to the remainder of the prisoner's imposed term of imprisonment;
>
> > **(B)** has shown . . . a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> > **(C)** has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; <u>and</u>

LEXIS 202725, at *4, 2022 WL 16748607, at *2 (M.D. Pa. Nov. 7, 2022).

**C.** **Final Orders of Removal**

The Warden cites the "final order of removal" provision, 18 U.S.C. § 3632(d)(4)(E)(i), in arguing that the BOP's refusal to

---

> **(D)**
>
> > **(i)** in the case of a prisoner <u>being placed in prerelease custody</u>, the prisoner—
> >
> > > **(I)** has been determined . . . to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
> > >
> > > **(II)** has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison . . . . ; <u>or</u>
> >
> > **(ii)** <u>in the case of a prisoner being placed in supervised release</u>, the prisoner has been determined . . . to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.
>
> . . . .
>
> **(3) Supervised release.--** <u>If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment</u> . . . the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under [18 U.S.C. § 3632].

Id. § 3624(g)(1) & (3) (emphasis added).

apply Mr. Komando's earned time credits was a policy choice that the agency was allowed to make under the FSA.

> (E) **Deportable prisoners ineligible to apply time credits.--**
>> **(i)  In general.--** A prisoner is ineligible to apply time credits . . . <u>if the prisoner is the subject of a final order of removal under any provision of the immigration laws</u> . . . .
>>
>> **(ii) Proceedings.--** The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act [concerning inadmissible aliens and deportable aliens] who seeks to earn time credits are [sic] subject to [expedited removal proceedings for aliens convicted of aggravated felonies and other specified crimes] at a date as early as practicable during the prisoner's incarceration.

18 U.S.C. § 3632(d)(4)(E)(i)-(ii) (emphasis added).

In his motion for summary judgment, the Warden maintains that the FSA, in general, allows the BOP to make discretionary decisions about which inmates are suitable candidates for early transfers to prerelease custody or supervised release.  The Warden asks this court to apply deference under <u>Skidmore</u> to the BOP's decision to extend that exception to prisoners like Mr. Komando, who have ICE detainers but who are <u>not</u> the subject of a final order of removal.[7]

---

[7] Although the terms used in the pertinent statute and BOP regulation in this matter are not identical, <u>compare</u> 18 U.S.C. § 3632(d)(4)(E)(i) (prisoner who "is the subject of a final order of removal" cannot apply any FSA time credits), <u>with</u> 28 C.F.R. § 523.44(a)(2) (BOP "may not" apply earned time credits of "any inmate who is . . . [s]ubject to" a final order of removal), the Warden has not argued in this case that there is a meaningful difference between the terms used in the statute and the BOP's implementing regulation, or that the BOP policy at issue here

Determining whether any deference is due to an agency's interpretation of a statute it administers requires the court to find a pertinent statutory ambiguity or gap.  Before concluding that a statute is ambiguous or silent with respect to a particular matter, the court must apply the "traditional tools" of construction to the statute.  See Chevron, 467 U.S. at 843, n.9. Cf. Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019) (adopting same approach in considering whether agency regulation is ambiguous). Those tools include the "'statute's text, its context, the structure of the statutory scheme, and canons of textual construction,'" Port Auth. Trans-Hudson Corp. v. Sec'y, 776 F.3d 157, 169 n.21 (3d Cir. 2015) (citation omitted); see also Boechler, P.C. v. Comm'r, 142 S. Ct. 1493, 1498 (2022).  Most salient among these is that statutory terms are construed in context, "'with a view to their place in the overall statutory scheme.'" West Virginia v. EPA, 142 S. Ct. 2587, 2607 (2022) (citation omitted).

This court begins its analysis of the pertinent provisions of the FSA by looking at the heading of subparagraph (E), which refers to "deportable" prisoners.  A deportable prisoner is an imprisoned noncitizen who is "subject to" removal under the immigration laws. See Black's Law Dictionary (11th ed. 2022) (defining "deportable alien").  The plain language of the statutory provision which

---

should be the subject of deference under Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984), based on 28 C.F.R. § 523.44(a)(2).

follows then clarifies the contours of the group of noncitizens
affected by the statute's restriction:  namely, those prisoners who
are "the subject of a final order of removal."  18 U.S.C.
§ 3632(d)(4)(E)(i).  Cf. Lawson v. FMR LLC, 571 U.S. 429, 446–47
(2014) (headings are "a short-hand reference to the general subject
matter," but are "not meant to take the place of the detailed
provisions of the text").  "The statute's language specifically
excludes only prisoners with a final order of removal from
eligibility to apply FSA time credits and contains no language that
also includes prisoners who are removable or who have immigration
detainers."  Sierra v. Jacquez, No. 22-cv-01509-RSL-BAT, 2022 WL
18046701, at *3, 2022 U.S. Dist. LEXIS 234525, at *7 (W.D. Wash.
Dec. 27, 2022) (report and recommendation).

Congress could have drafted statutory terms encompassing all
prisoners who are potentially removable if it had wanted to
preclude (or to authorize the BOP to exclude) noncitizens with
detainers from applying their earned time credits.  The pertinent
statute's heading ("deportable prisoners") and subparagraph (E)(ii)
("any alien") contain broader, more inclusive language Congress
could have used in subparagraph (E)(i) if it had wanted to exclude
prisoners with immigration detainers from applying their earned
time credits.  And an amendment to the "final order of removal"
provision, specifically excluding prisoners with "immigration
detainers" from applying their earned time credits, was offered on

the floor of the Senate but did not pass.  See 164 Cong. Rec.
S7658-02 (daily ed. Dec. 17, 2018) (Sen. Sasse's amendment).  This
court, and the BOP, must give effect to the plain language of the
statute that was enacted.  Potentially removable noncitizens who
are not the subject of final orders of removal are not within the
scope of subparagraph (E)(i), see Sierra, 2022 WL 18046701, at *5,
2022 U.S. Dist. LEXIS 234525, at *14.  Accordingly, Mr. Komando's
eligibility for the application of his earned time credits is
governed by the general rule of earned time credit applicability.
See 18 U.S.C. § 3632(d)(4)(C).

### D.  Eligibility for Transfers

The Warden next argues that the BOP policy of refusing to
apply the earned time credits of all prisoners with ICE detainers
is an exercise of its discretion to ascertain prisoner eligibility
for transfers under 18 U.S.C. § 3624(g).  In particular, the Warden
points out that § 3624(g)(3) uses discretionary language in
authorizing, but not requiring, the BOP to start a prisoner's term
of supervised release up to twelve months early, based on his or
her earned time credits.  Id. § 3624(g)(3).

The Warden has acknowledged that the eligibility criteria in
§ 3624(g) are not ambiguous.  And those are the criteria upon which
the mandatory terms of subparagraph (C) are hinged.  See id.
§ 3632(d)(4)(C) (BOP "shall transfer" eligible prisoners as

"determined under § 3624(g)").  To be eligible for transfers to
prerelease custody or supervised release under § 3624(g), prisoners
must have earned time credits equal to the remaining term of their
imprisonment, must have had their term of imprisonment computed,
must have demonstrated recidivism risk reduction or maintained a
minimum or low risk while imprisoned, and must satisfy the
additional statutory criteria that are applicable either to
supervised release candidates or to prerelease custody candidates.
See id. § 3624(g)(1)(A)-(C).

     For prerelease custody, the statute requires either that the
BOP found the person to be a minimum or low risk to recidivate in
the last two reassessments, or that the warden of the facility
where the prisoner is incarcerated has approved the prisoner's
petition for prerelease custody or supervised release.  See id.
§ 3624(g)(1)(D)(i).  For supervised release, the statute requires
that the BOP has found the person to be a minimum or low risk to
recidivate in the last risk reassessment, and that the person's
sentence includes a term of supervised release.  See id.
§ 3624(g)(1)(D)(ii) & (g)(3).  The eligibility requirements in
§ 3624(g) do not include any provision regarding whether a prisoner
is the subject of a detainer or pending immigration proceedings.

     The Warden's argument that the BOP has the discretion to make
the absence of a detainer (or pending charges) a prerequisite for
early supervised release has not prevailed in any reported case

involving similar claims, arising under § 2241.  See, e.g., Sierra, 2022 WL 18046701, at *3, 2022 U.S. Dist. LEXIS 234525, at *8 (report and recommendation) (FSA unambiguously requires BOP to apply the earned time credits of prisoner with immigration detainer who did not have final order of removal); Jones v. Engleman, No. 2:22-cv-05292-MCS-GJS, 2022 U.S. Dist. LEXIS 185029, 2022 WL 6445565 (C.D. Cal. Oct. 7, 2022) (in case where petitioner was subject to pending state charges but no detainer had been lodged, FSA did not allow BOP to refuse to apply earned time credits because of those pending state charges); Moody v. Gubbiotti, No. 21-12004 (RMB), 2022 WL 4976308, at *7 & n.6, 2022 U.S. Dist. LEXIS 181399, at *19 & n.6 (D.N.J. Oct. 3, 2022) ("there is no statutory provision or BOP regulation that precludes application of [FSA Time Credits] toward early supervised release of prisoners who have state detainers lodged against them," and, if BOP concludes that the petitioner is not eligible for prerelease custody, "it would appear that . . . early supervised release is the only reasonable choice for application of Petitioner's [FSA] Time Credits").

The magistrate judge in Jones expressed the FSA's pertinent framework succinctly, in rejecting the argument that the BOP had the discretion to exclude a prisoner from having his earned time credits applied simply because he was the subject of pending state charges:

> The language of the FSA shows that Congress made a conscious choice to do three things.  One, by its use of

17

"shall be applied" and "shall transfer" language in Section 3632(d)(4)(C), Congress made the application of earned [time credits] . . . mandatory for prisoners "eligible" under Section 3624(g).  Two, by Section 3624(g), Congress spelled out the prerequisites for a prisoner to be "eligible," which have been described earlier and do not contemplate any additional criteria or precondition . . . akin to the Pending Charges Exclusion. Third, . . . Congress explicitly determined which prisoners are "ineligible" to have the FSA's [earned time credits] . . . provisions applied to them, and none of these expressly delineated categories include prisoners who have pending charges. . . .

Jones, 2022 U.S. Dist. LEXIS 185635, at *34-35 (C.D. Cal. Sep. 7, 2022), R&R adopted subject to sustained objections, 2022 U.S. Dist. LEXIS 185029, 2022 WL 6445565 (C.D. Cal. Oct. 7, 2022) (granting petition, adopting magistrate judge's recommendation, but limiting magistrate judge's rationale to cases involving pending charges, as no lodged detainer had been at issue in the case, and specifically allowing BOP the discretion to apply earned time credits either to prerelease custody or to supervised relief).

To be sure, the FSA preserves the BOP's discretion to determine how to allocate earned time credits between supervised release and prerelease custody, and whether to allocate the credits entirely to advance the term of supervised release, to advance the placement in prerelease custody, or both.  But the argument that the BOP's discretion extends to precluding any application of credits for those with ICE detainers finds no support in the provisions the Warden has cited.

### III. *Skidmore* Analysis

The Warden has argued in its summary judgment brief in this case that the BOP policy at issue regarding immigration detainers should be accorded deference under Skidmore. Even if this court were to find that the preconditions of deference to an agency's policy under Skidmore are satisfied, the court would not be persuaded to accept the Warden's interpretation.

"Persuasiveness" under Skidmore "depends on the totality of the relevant factors." Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 55 (1st Cir. 2014) (citation omitted).

> To gauge persuasiveness, an inquiring court should look to a "mix of factors" that "either contributes to or detracts from the power of an agency's interpretation to persuade." Those factors include "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, [and the] consistency [of its interpretation] with earlier and later pronouncements."

Id. at 55-56 (citations omitted). "[T]he most salient of the factors that inform an assessment of persuasiveness [is] the validity of the agency's reasoning." Id. at 56 (citation omitted).

It is undeniably true that the BOP has expertise in prison administration in general, and, in particular, in placing prisoners in different types of custodial settings, in calculating sentence credits, and in releasing them from custody. Such expertise, however, is not determinative of whether this court should defer to the BOP's interpretation of the FSA earned time credit provisions. Earned time credits under the FSA are a new type of sentence credit

which operate independently of pre-existing credit systems and incentive programs.  The agency's generalized experience administering prisons does not provide a compelling reason for this court to defer under <u>Skidmore</u>.[8]

The Warden also points to the BOP's longstanding policy of denying prerelease custody and other programs and initiatives to prisoners with immigration detainers as a reason to defer to its analogous policy of denying the application of earned time credits to such prisoners.  Consistency with prior interpretations is one factor that may lead a court to find an agency's interpretation persuasive.  But the programs cited by the Warden (including the early release incentive program for some nonviolent prisoners who complete residential substance abuse treatment programs) involve the placement of a prisoner in residential treatment or other community-based, prerelease custody settings.  Prisoners who may present a heightened risk of flight because of a detainer or who may be subject to another agency's detention authority might reasonably be considered to be poor candidates for such placements. But those considerations do not apply in Mr. Komando's case, as he

---

[8] At the January 12, 2023 oral argument, BOP counsel represented to this court that the BOP has had difficulty in accurately and efficiently calculating prisoner earned time credits both electronically and manually.  Counsel was also unable to predict when the BOP would complete such a calculation in Mr. Komando's case.  Those representations did not inspire the court's confidence in the BOP's administration of the earned time credit provisions at issue.

seeks early transfer to supervised release.  The flight risk concern or other institutional factors that might influence a custodial placement decision have no relevance, in that release from BOP custody altogether is a permissible alternative exercise of the agency's discretion under the FSA.  Cf. 18 U.S.C. § 3632(d)(4)(C) (BOP shall transfer eligible prisoners to prerelease custody or supervised release).

The Warden also argues that its policy choice of refusing to apply earned time credits in cases such as Mr. Komando's is reasonable because it reduces the risk that prisoners with ICE detainers will be accidentally released before ICE has an opportunity to take custody, and because prisoners shuttled into ICE detention facilities will not reap any rehabilitative benefit of their early access to a term of supervised release.  These arguments miss the mark, and do not amount to undisputed facts or submissions of evidentiary quality, upon which a summary judgment motion could be based.

Given that the probation officer's involvement in a case like Mr. Komando's would provide an additional check on ensuring that a detainer is not overlooked, the risk of an accidental release provides no substantial reason to defer to the BOP's interpretation of the FSA regarding the timing of that release.  Moreover, the ability of the prisoner to realize a benefit from a term of supervised release will not be lessened if earned time credits are

applied sooner; the prisoner at the end of his term of imprisonment will begin his term of supervised release, and, from that point forward, that term will run in accordance with applicable law and the terms of his sentence, whether or not he is in ICE custody. See id. § 3624(e) ("supervised release commences on the day the person is released from imprisonment"); see also United States v. Johnson, 529 U.S. 53, 57 (2000) ("Supervised release does not run while an individual remains in the custody of the Bureau of Prisons.").

Finally, the BOP's conclusion, that its policy properly calibrates the balance between public safety, rehabilitation, and prisoners' reintegration into the community, has no persuasive force. By treating prisoners with immigration detainers the same as prisoners who have final orders of removal, the policy fails to consider that some low-risk prisoners with detainers might be released and reintegrated into the community during or after their immigration proceedings, while others will be detained and removed, depending on the nature of their convictions, ICE priorities, and the outcome of their proceedings. And the only way to make either outcome -- reintegration or removal -- happen sooner is to apply earned time credits towards supervised release in a case like Mr. Komando's (where the BOP facility in which he is incarcerated does not conduct expedited prisoner removal proceedings under 18 U.S.C. § 3632(d)(4)(E)(ii)). Congress concluded that the benefits of

reducing recidivism and slowing the rate of growth of the prison population are worthy goals that warrant allowing eligible low risk prisoners to be released up to a year early.  Keeping prisoners like Mr. Komando incarcerated for that extra year as a matter of policy undermines those goals and fails to give effect to the clear intent of Congress.  The district judge should deny the Warden's motion for summary judgment and grant the petitioner's cross-motion for summary judgment as well as his § 2241 petition.  In doing so, the district judge should require the BOP to recalculate Mr. Komando's release date, apply his earned time credits, and then release him, as set forth in the Conclusion of this Report and Recommendation.

## Conclusion

For the foregoing reasons, the magistrate judge recommends that the district judge:

1.    Grant Mr. Komando's motions for summary judgment (Doc. Nos. 2, 8);

2.    Deny the Warden's motion for summary judgment (Doc. No. 6); and

3.    Grant Mr. Komando's § 2241 petition (Doc. No. 1), to the extent that, no later than January 31, 2023, the BOP must recalculate Mr. Komando's projected release date, applying his FSA earned time credits, and then transfer him to supervised release (or ICE custody) within forty-eight hours of that recalculated date (or, if that date has passed, within forty-eight hours of the date of the district judge's Order approving this Report and Recommendation).

Any objections to this Report and Recommendation must be filed

within fourteen days of the date of receipt of this notice.  The objection period may be extended upon motion.  Failure to file any objection within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'"  Id. (citations omitted).


_____
Andrea K. Johnstone
United States Magistrate Judge

January 13, 2023

cc:  Jerry Ngome Komando, pro se
     Heather A. Cherniske, Esq.

24